## UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| **WILLIAM B. BALL,**<br><br>    **Plaintiff,**<br><br>        **v.**<br><br>**EXECUTIVE OFFICE FOR UNITED STATES ATTORNEYS,**<br><br>    **Defendant.** | **Civil Action No. 21-1949 (JEB)** |

## MEMORANDUM OPINION

After traveling from Dubai to Florida to meet a seven-year-old child for sex, *pro se* Plaintiff William B. Ball was arrested by Homeland Security agents and promptly pled guilty to attempted child enticement and transportation of child pornography.  He is now serving a 262-month sentence in federal prison, where he continues to litigate his case — including, as relevant here, by filing several requests under the Freedom of Information Act for records concerning him at four federal agencies.  After hearing nothing for several months, Ball sued the agencies, seeking to compel production of responsive records.  Over the course of this litigation, the issues in dispute have fortunately narrowed and the number of defendants has dwindled.  The sole remaining Defendant, the Executive Office for United States Attorneys, has now moved for summary judgment, which Ball opposes.  Finding that EOUSA has justified some withholdings while dropping the ball on others, the Court will give it a partial victory.

## I.    Background

In early 2018, Ball paid $5,000 to a "special agent posing as the father of a seven-year-old child to organize a sexual encounter with the child." United States v. Ball, 835 F. App'x 493, 494 (11th Cir. 2020); see United States v. Ball, No. 18-69 (M.D. Fla. Feb. 15, 2018), ECF No. 36 (Am. Plea Agreement) at 24. Plaintiff then traveled from his residence in Dubai to Tampa, Florida, where he was arrested by agents from Homeland Security Investigations (HSI). See Am. Plea Agreement at 24–26. Ball shortly thereafter admitted that his purpose in traveling to Tampa was "to meet with and engage in sexual activities with a seven-year-old child." Id. A search of his iPhone also revealed that he possessed hundreds of images and several dozen videos of child pornography. Id. at 27. He subsequently pled guilty to attempted child enticement and transportation of child pornography in violation of 18 U.S.C. §§ 2252(a)(1) and (b)(1), see id. at 1, and was sentenced to over 21 years in prison. See Ball, No. 18-69, ECF No. 60 (Judgment) at 2.

Beginning in August 2020, Plaintiff began to file FOIA requests with four different federal agencies: the Transportation Security Administration, the Justice Department's Office of International Affairs, the State Department, and — most relevant for present purposes — EOUSA. See ECF Nos. 5 (Am. Compl.), ¶¶ 9–21; 58-1 (MSJ) at 2. His request to EOUSA asked for "any and all records" related to him,

> including but not limited to: (1) investigatory records, hand-written notes and final drafts; (2) database records; (3) reports of evidentiary findings and conclusions; (4) "Tickler" reports; (5) discovery records; (6) interagency documents; (7) internal USAO MDFL and interagency recorded telephonic communication; (8) internal USAO MDFL and interagency email communication; (9) photographs; and (10) all other information, data and reports of any kind not listed above and exempt by law.

ECF No. 58-5 (FOIA request) at 1.  By July of the following year, having received no response, Plaintiff filed this FOIA suit, eventually naming all four agencies as Defendants.  See ECF No. 1 (Compl.); Am. Compl., ¶ 1.  He sought declaratory relief and a court order that the agencies provide the requested documents.  See Am. Compl. at 5.  The parties subsequently agreed to defer summary-judgment briefing until after Defendants had processed Ball's various FOIA requests and produced any responsive records.  See ECF Nos. 20 (January 12, 2022, Status Report), ¶ 8; 21 (Response to January 12, 2022, Status Report), ¶ 8.

After several years of productive cooperation among the parties, EOUSA is now the last Defendant standing.  See February 12, 2024, Minute Order (granting Plaintiff's motion to drop other Defendants but denying motion to join U.S. Immigration and Customs Enforcement).  It has processed thousands of pages of responsive documents and now moves for summary judgment, asserting that its various withholdings were justified under FOIA Exemptions 3, 5, 6, 7(C), 7(E), and 7(F).  See MSJ at 1.  Because some of EOUSA's document descriptions were thin, the Court ordered Defendant to produce the withheld documents for _in camera_ review, see August 21, 2024, Minute Order, which has now been completed.

## II.   Legal Standard

Summary judgment must be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986); Holcomb v. Powell, 433 F.3d 889, 895 (D.C. Cir. 2006).  A fact is "material" if it can affect the substantive outcome of the litigation.  See Liberty Lobby, 477 U.S. at 248; Holcomb, 433 F.3d at 895.  A dispute is "genuine" "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Liberty Lobby, 477 U.S. at 248; see also Scott v. Harris, 550 U.S.

372, 380 (2007); Holcomb, 433 F.3d at 895.  "A party asserting that a fact cannot be or is genuinely disputed must support the assertion" by "citing to particular parts of materials in the record" or "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1).  The moving party bears the burden of demonstrating the absence of a genuine issue of material fact.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

"FOIA cases typically and appropriately are decided on motions for summary judgment." Defenders of Wildlife v. U.S. Border Patrol, 623 F. Supp. 2d 83, 87 (D.D.C. 2009); Brayton v. Office of U.S. Trade Rep., 641 F.3d 521, 527 (D.C. Cir. 2011).  In a FOIA case, a court may grant summary judgment based solely on information provided in an agency's affidavits or declarations when they "describe the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record" or "by evidence of agency bad faith."  Larson v. U.S. Dep't of State, 565 F.3d 857, 862 (D.C. Cir. 2009) (citation omitted). Such affidavits or declarations "are accorded a presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents."  SafeCard Servs., Inc. v. SEC, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (citation and internal quotation marks omitted).  "Unlike the review of other agency action that must be upheld if supported by substantial evidence and not arbitrary or capricious, the FOIA expressly places the burden 'on the agency to sustain its action' and directs the district courts to 'determine the matter de novo.'"  DOJ v. Reps. Comm. for Freedom of the Press, 489 U.S. 749, 755 (1989) (quoting 5 U.S.C. § 552(a)(4)(B)).  Summary judgment is only proper when the court is assured

that the record justifies the result.  See Ctr. For Investigative Reporting v. Customs & Border

Prot., 436 F. Supp. 3d 90, 100 (D.D.C. 2019).

### III.   Analysis

Congress enacted FOIA "to pierce the veil of administrative secrecy and to open agency

action to the light of public scrutiny."  Dep't of Air Force v. Rose, 425 U.S. 352, 361 (1976)

(citation omitted).  The statute promotes these aims by providing that "each agency, upon any

request for records which (i) reasonably describes such records and (ii) is made in accordance

with published rules[,] . . . shall make the records promptly available to any person."  5 U.S.C.

§ 552(a)(3)(A).  The Government need not, however, turn over requested information that falls

into one of nine statutorily created exemptions from FOIA's broad directive.  Id. § 552(b)(1)–(9).

The Court can compel the release of any records that do not satisfy the requirements of at least

one exemption.  See Reporters Comm., 489 U.S. at 755.

A "veritable avalanche of FOIA-related precedent" guides this Court's determination of

whether the Government has carried its burden of establishing that a given exemption applies.

Ullah v. CIA, 435 F. Supp. 3d 177, 182 (D.D.C. 2020).  Ultimately, "when an agency seeks to

withhold information, it must provide a relatively detailed justification, specifically identifying

the reasons why a particular exemption is relevant."  Morley v. CIA, 508 F.3d 1108, 1122 (D.C.

Cir. 2007) (quoting King, 830 F.2d at 219).  "[A]n agency's justification for invoking a FOIA

exemption is sufficient if it appears 'logical' or 'plausible.'"  Larson, 565 F.3d at 862 (quoting

Wolf v. CIA, 473 F.3d 370, 374–75 (D.C. Cir. 2007)).

At this stage of the litigation, the parties have considerably cabined the issues in dispute.

Although he seeks the production of documents that did not turn up in EOUSA's search, Ball

does not otherwise generally contest the adequacy of Defendant's search process.  See ECF No.

61-1 (Opp.) at 6, 17.  He also concedes the legitimacy of the withholdings under Exemption 7(F),
see id. at 6, and his sole objection to Exemption 6 concerns Defendant's foreseeable-harm
analysis.  Id. at 20–21.  The Court will treat any other objections not raised as forfeited, see King
v. DOJ, 2021 WL 3363406, at *4 (D.D.C. Aug. 3, 2021) ("Where the FOIA requester does not
take issue with the government's decision to withhold specific documents, the Court can
reasonably infer that the FOIA requester does not seek those specific records and that there is no
case or controversy with respect to those records sufficient to sustain the Court's jurisdiction."),
and it will decline to address any exemption to the extent that another one properly applies.  See
UtahAmerican Energy, Inc. v. Dep't of Labor, 685 F.3d 1118, 1123 (D.C. Cir. 2012) ("[T]he
government . . . need prevail on only one exemption.") (cleaned up) (quoting ACLU v. Dep't of
Defense, 628 F.3d 612, 623 n.3 (D.C. Cir. 2011)).  As for the other exemptions, Plaintiff has
raised targeted objections, which the Court will address seriatim, the sole exception being a brief
discussion of Exemption 7(C) within the discussion of Exemption 5.

   A.  Adequacy of Search

   Before assessing the validity of EOUSA's asserted exemptions, the Court must determine
whether Defendant has fulfilled its adequate-search requirement.  The agency can do so only "if
it can demonstrate beyond material doubt that its search was 'reasonably calculated to uncover
all relevant documents.'"  Valencia-Lucena v. U.S. Coast Guard, 180 F.3d 321, 325 (D.C. Cir.
1999) (quoting Truitt v. Dep't of State, 897 F.2d 540, 542 (D.C. Cir. 1990)).  "[T]he issue to be
resolved is not whether there might exist any other documents possibly responsive to the request,
but rather whether the search for those documents was adequate."  Weisberg v. DOJ, 745 F.2d
1476, 1485 (D.C. Cir. 1984).  To meet its burden, the agency may submit affidavits or
declarations that explain "in reasonable detail the scope and method of the search conducted."

Perry v. Block, 684 F.2d 121, 127 (D.C. Cir. 1982).  The affidavits or declarations should "set[]

forth the search terms and the type of search performed, and aver[] that all files likely to contain

responsive materials (if such records exist) were searched." Oglesby v. U.S. Dep't of Army, 920

F.2d 57, 68 (D.C. Cir. 1990).  Absent contrary evidence, such affidavits or declarations are

sufficient to show that an agency complied with FOIA.  See Perry, 684 F.2d at 127.

      Here, EOUSA submitted Ball's FOIA request to the U.S. Attorney's Office for the

Middle District of Florida, which handled his prosecution.  See MSJ at 7.  The Middle District

then followed its "standard practice" to search for responsive records, which included a

"comprehensive search of a computerized docketing case management system known as

CaseView"; the receipt of "criminal, asset forfeiture, and appeal files from legal assistants within

the Office"; and searches of "the electronic criminal file and electronic appeals file in [the

Office's] internal system, locating investigative materials such as videos, audio recordings, and

photographs." Id. at 7–8; see also ECF No. 58-14 (Decl. of Megan D. Hoobler, FOIA

Coordinator for the Middle District), ¶¶ 10–19.  The end result was 2,917 pages of responsive

records, which were subsequently processed to determine appropriate redactions.  See ECF No.

58-4 (Decl. of Ebony Griffin, Attorney-Advisor for the FOIA Staff of EOUSA), ¶¶ 14–15.  Of

those, 992 pages were released in full and 245 pages in part; 1,216 pages were withheld in full;

181 pages were confirmed as duplicate or nonresponsive material; and approximately 285 pages

were referred to the Federal Bureau of Investigation, ICE, and the U.S. Marshals Service for

processing. Id., ¶¶ 18–19.  Those three agencies, in turn, released 138 pages in full and 143

pages in part, withholding 4 pages. Id.; see MSJ at 2, 8–9.

      Plaintiff does not generally contest the adequacy of this search process.  Rather, at

various points he argues that ICE should have produced certain records to which he seeks access.

Specifically, Ball requests that the Court: (1) "direct ICE to release, through EOUSA, all email communications amongst HSI Tampa staff discussing Ball's enticement sting, and . . . to release, through EOUSA, pre-arrest Operation Plans, protocols, and supervisory approval and authority" for its operation, see Opp. at 6; and (2) "direct ICE to provide EOUSA" with additional Technical Assistance Reports and Child Identification Reports from the National Center for Missing and Exploited Children. Id. at 17.

An adequate-search challenge cannot, however, serve as a backdoor FOIA request to a separate and independent agency. As Defendant rightly points out, if Ball seeks records from ICE, "the law requires [him] to submit a request . . . directly to" that agency. See ECF No. 66 (Reply) at 4. Plaintiff has not done so. Failing that, ICE's mere involvement as an "agency with which EOUSA consulted" in responding to Plaintiff's FOIA request "does not require ICE in turn to conduct additional searches of its own." Id. at 3–4; see Antonelli v. Fed. Bureau of Prisons, 591 F. Supp. 2d 15, 26 (D.D.C. 2008) ("An agency's disclosure obligations are not triggered . . . until it has received a proper FOIA request in compliance with its published regulations."). Indeed, granting Ball's request would transform the adequate-search requirement into a backstop for plaintiffs who discover only through litigation that they had misdirected their initial FOIA requests. That is not its function. See Johnson v. United States, 239 F. Supp. 3d 38, 44 (D.D.C. 2017) (granting summary judgment for the Government where "Plaintiff had not submitted a FOIA request . . . prior to filing this civil action").

The record moreover reflects — and Ball does not contest — that EOUSA conducted a search of its own records that was "reasonably calculated to uncover all relevant documents." Valencia-Lucena, 180 F.3d at 325 (quoting Truitt, 897 F.2d at 542). A declaration attached to Defendant's Motion attests that "[a]ll systems of records located within the [Middle District] that

are likely to contain records responsive to plaintiff's request have been thoroughly searched."

Hoobler Decl., ¶ 35.  That this search did not produce certain records that Ball wishes to see does

not, on its own, indicate that the search was inadequate.  See Kowal v. DOJ, 107 F.4th 1018,

1027 (D.C. Cir. 2024) ("We focus on the process, not the results, when determining the adequacy

of a FOIA search.").

      Summary judgment for EOUSA is thus proper on the adequacy of the search, and the

Court will next address the propriety of Defendant's withholdings under the asserted FOIA

exemptions.

      B.  Exemption 3

      Start with Exemption 3, which permits agencies to withhold information "specifically

exempted from disclosure by statute."  5 U.S.C. § 552(b)(3).  A statute triggers the exemption if

it "requires that . . . matters be withheld from the public in such a manner as to leave no

discretion on the issue" or "establishes particular criteria for withholding or refers to particular

types of matters to be withheld."  Id., § 552(b)(3)(A).  As both sides appear to agree, one such

statute is the Child Victims' and Child Witnesses' Rights Act, which requires withholding "all

documents that disclose the name or any other information concerning a child" "in connection

with a criminal proceeding."  18 U.S.C. § 3509(d)(1); see Corley v. DOJ, 998 F.3d 981, 985

(D.C. Cir. 2021) ("We agree with the government that the Child Victims' Act unambiguously

qualifies as an Exemption 3 statute.").  Citing this statute, ICE and FBI withheld "portions of

records pertaining to child victims involved in criminal proceedings."  MSJ at 11.

      Reading Plaintiff's Opposition generously, the Court understands his sole complaint here

to be that certain Exemption 3 withholdings by ICE referenced an "Unspecified Statute."  See

Opp. at 17–18; ECF 61-4 (FOIA App.) at 21–22 (redactions in question).  EOUSA has clarified

9

in its Reply, however, that the "mystery Exemption 3 statute" is, in fact, the Child Victims' Act,

which was mislabeled as "an artifact of the way the documents were produced."  Reply at 9.

That response appears to vitiate Plaintiff's objections.  Ball has not otherwise raised — nor, in

light of Corley, could he raise — any objection to the invocation of § 3509(d) for the

withholdings at issue here, and the Court finds that they are amply justified.

    C.  Exemption 5

Next up is Exemption 5, under which Ball raises most of his objections.  This exemption

shields from disclosure "inter-agency or intra-agency memorandums or letters that would not be

available by law to a party other than an agency in litigation with the agency."  5 U.S.C.

§ 552(b)(5).  It thus authorizes agencies to withhold from a FOIA requester any "documents[]

normally privileged in the civil discovery context."  NLRB v. Sears, Roebuck & Co., 421 U.S.

132, 149 (1975); see also United States v. Weber Aircraft Corp., 465 U.S. 792, 799 (1984).  That

shield generally encompasses three distinct components — namely, the deliberative-process

privilege (sometimes referred to as "executive privilege"), the attorney-client privilege, and the

attorney-work-product privilege.  See Am. Immigration Council v. U.S. Dep't of Homeland Sec.,

905 F. Supp. 2d 206, 216 (D.D.C. 2012).  For reasons that shall shortly become clear, the last is

primarily at issue here.

"The attorney work-product [prong of Exemption 5] protects 'documents and tangible

things that are prepared in anticipation of litigation or for trial' by an attorney."  Id. at 221

(quoting Fed. R. Civ. P. 26(b)(3)(A)).  As this Court has noted in the past, this privilege is

relatively broad, encompassing documents prepared for litigation that is "foreseeable," even if

not necessarily imminent.  Id.  The privilege is not unlimited, however.  No doubt potential

future litigation "touches virtually any object of a [law-enforcement-agency] attorney's

attention," but "if the agency were allowed to withhold any document prepared by any person in the Government with a law degree simply because litigation might someday occur, the policies of the FOIA would be largely defeated." Senate of Puerto Rico v. DOJ, 823 F.2d 574, 586–87 (D.C. Cir. 1987) (internal quotation marks omitted).

When reviewing a withholding under the work-product prong, then, the D.C. Circuit "employs a because-of test, inquiring whether, in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation." FTC v. Boehringer Ingelheim Pharms. Inc., 778 F.3d 142, 149 (D.C. Cir. 2015) (quoting United States v. Deloitte LLP, 610 F.3d 129, 137 (D.C. Cir. 2010)). Where a document would have been created "in substantially similar form" regardless of the litigation, work-product protection is not available. See Deloitte, 610 F.3d at 138 (quoting United States v. Adlman, 134 F.3d 1194, 1195 (2d Cir. 1998)). Rather, the Government must at least demonstrate that the lawyer who prepared the document possessed the "subjective belief that litigation was a real possibility, and [the] belief [was] objectively reasonable." In re Sealed Case, 146 F.3d 881, 884 (D.C. Cir. 1998). That requires the Government to "(1) provide a description of the nature of and contents of the withheld document, (2) identify the document's author or origin, (3) note the circumstances that surround the document's creation, and (4) provide some indication of the type of litigation for which the document's use is at least foreseeable." Ellis v. DOJ, 110 F. Supp. 3d 99, 108 (D.D.C. 2015).

An agency may withhold information that falls within this or any other discretionary exemption's scope, moreover, "only if . . . the agency reasonably foresees that disclosure would harm an interest" the exemption protects. See 5 U.S.C. § 552(a)(8)(A)(i)(I). Congress derived this foreseeable-harm requirement from an identical Department of Justice policy originally

introduced in 1993 to address "concerns that some agencies [were] overusing FOIA exemptions that allow, but do not require, information to be withheld from disclosure."  S. Rep. No. 114-4, at 2–3 (2015); see also H.R. Rep. No. 114-391, at 9–10 (2016).  The requirement thus forces agencies to "articulate both the nature of the harm [from release] and the link between the specified harm and specific information contained in the material withheld."  Reporters Comm. for Freedom of Press v. FBI, 3 F.4th 350, 369 (D.C. Cir. 2021) (quoting H.R. Rep. No. 114-391, at 9).  They can, consequently, no longer "rely on mere speculative or abstract fears, or fear of embarrassment to withhold information.  Nor may the government meet its burden with generalized assertions."  Id. (cleaned up).

Plaintiff objects to the withholding under Exemption 5 of roughly two categories of documents.  The Court will discuss them in turn before addressing foreseeable harm.

### 1. *Trial Preparation Material*

In the first category are various documents utilized in prosecuting the case against Ball, all of which were withheld as "Trial Preparation Material" under the work-product privilege. Those records, according to the Vaughn Index, include the following: (1) A 92-page document listed as "Practice Guidelines of Sexual Abusers," ECF No. 58-18 (Vaughn Index) at ECF pp. 5– 6 (Bates Nos. 174–266); (2) A 344-page document called "Standard and Guidelines of Domestic Violence and Sexual Offenders," id. at ECF pp. 6–10 (Nos. 276–620); (3) A 108-page document labeled "Law and Behavior Standard," id. at ECF pp. 11–12 (Nos. 680–788); (4) A 53-page document entitled simply "Trial Preparation Material" that both Ball and EOUSA refer to as a trial preparation "manual," id. at ECF pp. 12–13 (Nos. 789–842); see Opp. at 10; Reply at 11; and (5) Approximately 21 further pages also withheld as "Trial Preparation Material" or

"Criminal Case," id. at ECF p. 13 (Nos. 868–89), for which Defendant has also invoked the deliberative-process privilege and Exemptions 6 and 7(C).

Plaintiff generally complains that the Vaughn Index descriptions for these documents do not indicate what they contain, who authored them, whether they were prepared for litigation, or even whether they at all differ from publicly available sources. See Opp. at 9–10, 14. Defendant, in response, has submitted a supplemental declaration by Ebony Griffin, an Attorney-Adviser with the FOIA/Privacy Act staff of EOUSA, describing the documents and explaining why Defendant has invoked the work-product privilege in withholding them. See ECF No. 66-3 (Suppl. Decl. of Ebony Griffin).

Even with the benefit of that supplemental declaration, however, EOUSA falls short of its obligation to explain the basis for its withholdings. The Vaughn Index is no help at all: it contains scarcely more information than the titles of the documents and the exemption invoked. See Vaughn Index at ECF pp. 5–13. The supplemental declaration does a little better, but not much. To take just one example, Defendant justifies withholding all 344 pages of the "Standard and Guidelines" document on the basis that it "contributed to the decision-making process of the attorneys" and "is used by the Department to develop legal arguments regarding the process of obtaining prosecution for certain investigative techniques that relate to sexual crimes." Suppl. Griffin Decl., ¶ 12(c). As nearly anything can contribute to a lawyer's decisionmaking process, that description does nothing to explain why EOUSA has invoked the work-product privilege.

The fundamental problem here, however, is that *in camera* review of these documents reveals that most of these descriptions are not just incomplete; they are also inaccurate. In fact, every single one of the above records is a publicly available document created by a third party. The "Practice Guidelines" that would apparently reveal "privileged recommendations" are

13

actually issued by the Association for the Treatment of Sexual Abusers and can be found through a simple Google search.  The same goes for the "Standard and Guidelines" record (entitled "Standards and Guidelines for the Assessment, Evaluation, Treatment, and Behavioral Monitoring of Adult Sex Offenders"), which is published by the Colorado Department of Public Safety on its website.  Other records include a publicly available academic article, a widely used rating system for predicting sexual abuse recidivism ("Static-99R"), and various federal-court opinions.  The Court cannot fathom how such documents could be considered exempt from FOIA: they are not even "inter-agency or intra-agency memorandums or letters," as required by Exemption 5, much less those "prepared in anticipation of litigation or for trial by an attorney." Am. Immigration Council, 905 F. Supp. 2d at 221 (internal quotation marks omitted).

To be sure, "under some circumstances, an attorney's compilation of various documents, each of which is itself a proper subject of discovery, constitutes an attorney's opinion work product subject to protection."  Shapiro v. DOJ, 969 F. Supp. 2d 18, 31 (D.D.C. 2013) (internal quotation marks omitted).  Even had EOUSA articulated this rationale for withholding the documents, however — and it did not — "not every compilation by an attorney is protected."  Id. at 32.  The crucial factor is "whether the attorney's selection of the contents could reveal or provide insights into the 'mental processes of the attorney' in the analysis and preparation of a client's case."  Id. (internal quotation marks omitted).  The Court finds little danger of that here. Few would be surprised to learn that government attorneys consulted standard practice guidelines and relevant caselaw in preparation for trial, and the several hundred pages at issue here reveal little other than that the attorneys in the Middle District did their homework.

Two final notes are in order.  First, the Government has claimed Exemption 5's deliberative-process privilege for page nos. 868–89, a single document it titles "Criminal Case"

and "Trial Preparation Material."  It also puzzlingly invokes Exemptions 6 and 7(C) to withhold "third party names" in the event that the entire document is not withheld under Exemption 5. See Vaughn Index at 13; Reply at 14–15.  Both the latter exemptions aim to protect personal privacy: the former by permitting withholding of information about individuals in "personnel and medical files and similar files" when disclosure "would constitute a clearly unwarranted invasion of personal privacy," and the latter by permitting withholding of law-enforcement information when disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(6), (7)(C).

There is no basis for these exemptions here.  The single record at issue, believe it or not, is simply a copy of United States of America v. Wilkerson, 702 F. App'x 843 (11th Cir. 2017), a separate case involving a sex offender.   Quite aside from the fact that Wilkerson is not a "personnel" or "medical" file as required by Exemption 6, it beggars belief to assert privacy interests in a published court opinion.  And for the same reasons that the Court previously rejected EOUSA's assertion of the work-product privilege over the entire document, it likewise finds no basis for withholding the opinion under the deliberative-process privilege.  That privilege shields only "predecisional" and "deliberative" agency records, Access Reps. v. DOJ, 926 F.2d 1192, 1194 (D.C. Cir. 1991), to protect the free exchange of "opinions, ideas, and points of view" within an agency's operations and decisionmaking processes.  Ackerly v. Ley, 420 F.2d 1336, 1341 (D.C. Cir. 1969).  A court case is no such record.

Second — and the above determination notwithstanding — a few pages within the withholdings discussed above seem to have highlighted annotations.  Those markings apparently affect only a few records: the "Standards and Guidelines" document published by the Colorado Department of Public Safety, an academic article, and the Wilkerson case.  See Vaughn Index at

15

ECF pp. 6, 11, 13 (Nos. 300–10, 683, 873–76).  While the documents themselves are not work product or protected by the deliberative-process privilege, the annotations fall under Exemption 5.  See, e.g., United States ex rel. Landis v. Tailwind Sports Corp., 303 F.R.D. 429, 433 (D.D.C. 2014) (concluding that "attorney notes or highlighting" constitute "opinion work product").  For these documents and any others that may have such annotations, the Government may thus choose either to produce un-annotated versions of the documents or to withhold only those pages with annotations.

In sum, then, the Court finds that the following Bates-numbered pages may not be withheld under Exemption 5 and must be disclosed, except to the extent they are visibly annotated: Nos. 174–265, 276–620, 680–788, 789–842, and 868–89.

### 2.  *Internal Memoranda and Emails*

Defendant fares better with the second category of documents withheld under Exemption 5 and the work-product privilege.  These consist primarily of internal memoranda produced by attorneys at the Middle District in anticipation of litigation against Ball himself as well as emails among the attorneys discussing litigation strategy.  See Vaughn Index at ECF pp. 3–4 (Nos. 46–92), 10 (No. 633, 656–59), 14 (Nos. 944, 952), 27 (Nos. 119–20, 122–27).  Unlike EOUSA's stingy and inaccurate descriptions of the trial-preparation materials, most of the justifications asserted for the redactions in this category clear the bar.

The Vaughn Index describes the memoranda as "internal" documents containing "litigation and prosecution strategy" and occasionally "handwritten notes."  Id.  The declarations further explain that such internal memoranda may contain "details of the proposed child pornography criminal charges, witness names, and evidence," as well as information on "forfeiture proceedings and victim witnesses, legal research and supporting legal cases for sex

16

offenders, draft court documents, and draft appeal preparation documents (checklists, personal attorney notes, and sample briefs of similar cases related to sexual offenders against minors)." Griffin Decl., ¶ 28.  For instance, the document dated February 14, 2018, "references the plaintiff's criminal case" and includes "errors, edits, comments detailing discussion of prosecution, and handwritten notes of the government attorneys."  Suppl. Griffin Decl., ¶ 12(a). Another memorandum was prepared by an attorney and "discusses standards applicable to the plaintiff's criminal case."  Id., ¶ 12(g).  And a third, which references a "complaint," is apparently a draft document, see id., ¶ 12(e), granting internal "approval to file the complaint." Reply at 11.

Such descriptions sufficiently describe the nature and contents of the withheld documents, identify the origin and circumstances of their creation when known, and indicate that they were prepared with the objectively reasonable expectation of litigation against Ball himself. Cf. Ellis, 110 F. Supp. 3d at 108–09.  "These types of documents, in short, are classic attorney work product, the disclosure of which would risk putting DOJ's lawyers' thought processes and strategy on public display."  Id. at 109.

Some of the emails for which Ball seeks to compel disclosure likewise fall under the privilege.  The Vaughn Index describes these emails as "internal inquiries and communication exchange[s] between AUSA and agency staff about trial," Vaughn Index at ECF p. 27 (Nos. 119–20, 122–27), and the supplemental declaration notes that the exchanges "were prepared in connection with a law enforcement proceeding and discuss litigation strategy for the plaintiff's criminal case."  Suppl. Griffin Decl., ¶ 12(f).  While such descriptions win no awards for comprehensiveness, they suffice to meet the Government's burden, especially in light of the

"presumption of good faith" afforded agency declarations — though Defendant has tested the limits of that presumption here.  <u>See</u> <u>SafeCard Servs.</u>, 926 F.2d at 1200.

One email, however, raises slightly different issues.  <u>See</u> <u>Vaughn</u> Index at ECF p. 14 (Nos. 944, 952).  As Plaintiff points out, this email appears to have been released twice — in earlier and later productions — with different redactions applied each time.  <u>See</u> Opp. at 12; FOIA App. 62–63.  The principal difference between the two is that the later-produced copy of the email reveals a block of text (following the clause, "As we have already discussed . . . ") that the first version redacts under both Exemption 5 and Exemption 7(E).  <u>Compare</u> FOIA App. 63 (unredacted), <u>with</u> FOIA App. 62 (redacted).  Plaintiff argues that, "as the key portion of this email sequence has been revealed, EOUSA can no longer exert associated Exemption 5 withholdings" in the document.  <u>See</u> Opp. at 12.  Defendant, for its part, curiously continues to insist that "release of the entire record would inhibit the candid, internal discussion necessary for efficient and proper trial preparation."  Suppl. Griffin Decl., ¶ 12(h).  That response is odd not just because Defendant has already released the redacted text, but also because the email chain concerns a prior <u>FOIA request</u> Ball filed with HSI Tampa — not his trial.  In any event, Ball's objection wins the day, but it gets him nothing: because Plaintiff already has access to a version without that redaction, the Court sees no point in ordering the Government to re-release the exact same document.

Ball also contests an Exemption 5 redaction on a different email that seems to be part of the same HSI-Tampa-related email chain.  <u>See</u> Opp. 20; FOIA App. 66 (redaction following "FYI —").  Defendant appears not to address this objection, other than to generally claim that "ICE did not ultimately assert Exemption 5 in connection with the materials sent on consultation."  ECF 66-1 (Def.'s Resp. to Plaintiff's Statement of Material Facts), ¶ 11; <u>see also</u>

Reply at 7 ("ICE . . . did not . . . withhold any document under Exemption 5.").  Astute readers will wonder how Defendant can both defend its Exemption 5 redaction in one part of the email chain while claiming in the same breath that it has not asserted any Exemption 5 withholdings in any such records.  In any event, neither Plaintiff nor Defendant identifies which <u>Vaughn</u> Index entry corresponds to FOIA Appendix p. 66.  The Court thus lacks a basis for assessing the justification for the Exemption 5 redaction — or even a way of knowing whether an unredacted copy has been provided to Plaintiff — and will order EOUSA to produce the record without such redaction to the extent it has not already done so.

### 3. *Foreseeable Harm*

For the withholdings on which it prevails, the Government has sufficiently demonstrated that it "reasonably foresees that disclosure would harm an interest" the exemption protects.  <u>See</u> 5 U.S.C. § 552(a)(8)(A)(i)(I).  In particular, Defendant has explained that disclosure of the internal memoranda and emails would "reveal privileged recommendations regarding whether and how to respond to criminal prosecutions" and would "prevent the Department from being able to assert a viable privilege to the extent those records are sought in other criminal prosecutions."  Griffin Decl., ¶¶ 49, 51.  The Court agrees that there is a "strong national interest in protecting" children from sexual abuse, and that disclosure of those documents and others on which the Government has met its burden "would have negative, downstream consequences on the prosecution of other similar actions regarding sexual misconduct involving minors."  Suppl. Griffin Decl., ¶ 26.

### D.  Exemption 6

As previously explained, FOIA also permits agencies, under the banner of Exemption 6, to withhold information "the disclosure of which would constitute a clearly unwarranted invasion

of personal privacy." 5 U.S.C. § 552(b)(6).  Plaintiff, in an interesting twist, actually chides

Defendant for <u>under</u>-redacting documents under this exemption, thus leaving "cracks" in its

"armor."  Opp. at 18.  Ball then wedges into these cracks a blanket argument that EOUSA's

disclosures have thereby implicitly admitted that its remaining Exemption 6 redactions are not

necessary to avert a reasonably foreseeable harm.  <u>See</u> <u>id.</u> at 20–21.

      As EOUSA points out, however, an "agency may have additional reasons for releasing

some government email addresses and withholding others," such as "differences in rank or the

public availability of contact information for the government employee."  Reply at 13.  The

inconsistencies also appear to stem, at least in part, from EOUSA's reprocessing of its records at

Ball's request, which led Defendant to "lift[] certain withholdings . . . in the interests of reducing

disputes for the Court."  Def.'s Resp. to Plaintiff's SMF, ¶ 7.  The Government elsewhere amply

explains, moreover, what it fears: the "unwarranted invasion of privacy of the minor victims,

witnesses, and third parties mentioned in the records," as well as that of "investigative federal

agents" and "government staff and attorneys."  Suppl. Griffin Decl., ¶¶ 21, 23.  EOUSA also

reasonably "seeks to protect the . . . telephone numbers and other [personally identifying

information] data listed on the records," <u>id.</u>, ¶ 21, to protect individuals from "efforts to (a)

contact them directly, (b) gain access to their personal or financial information, or (c) subject

them to harassment or harm."  MSJ at 19.  The Court cannot ignore those expected privacy

harms merely because, on Plaintiff's telling, the Government could have withheld even <u>more</u>

personal information.  Nor does any countervailing public interest mandate such disclosure.  <u>See</u>

<u>id.</u> at 17–18.

E.  Exemption 7(E)

That leaves Exemption 7(E), which permits the withholding of "records or information compiled for law enforcement purposes" if disclosure would reveal techniques, procedures, or guidelines for "investigations or prosecutions" and "could reasonably be expected to risk circumvention of the law."  5 U.S.C. § 552(b)(7)(E).  Among the records that ICE withheld under this exemption were various audio and video files, covering both Plaintiff's arrest and interview (withheld in part) as well as his detention-facility calls and Skype calls (withheld in full).  See ECF No. 58-10 (Decl. of Fernando Pineiro, ICE FOIA Officer), ¶ 13.  Ball protests that ICE's Vaughn Index improperly aggregates these files into a single record entitled, "Audio of the interview with Mr. Ball and video of Mr. Ball's arrest."  ECF No. 58-12 (ICE Vaughn Index) at 13–15 (Item No. 14).  He requests that the Court "direct ICE to republish" its Vaughn Index to disaggregate each video and audio file into separate entries with timestamped markers denoting each claimed exemption.  See Opp. at 15, 19.

Ball misunderstands the purpose of a Vaughn Index.  It is but one tool — admittedly, a sometimes indispensable one — for agencies to meet their obligation to "specify in detail which portions of" a record are disclosable and provide a "proper justification" for any withholdings.  Vaughn v. Rosen, 484 F.2d 820, 827 (D.C. Cir. 1973).  But agencies may also discharge this responsibility through "sufficiently detailed affidavits or declarations."  Agrama v. IRS, 282 F. Supp. 3d 264, 273 (D.D.C. 2017) (internal quotation marks omitted); see Comptel v. FCC, 945 F. Supp. 2d 48, 53 (D.D.C. 2013) (listing Vaughn Index, *in camera* review, and declarations as potentially interchangeable and complementary tools through which an agency can show the applicability of a FOIA exemption).  That is why courts in this district have long explained that "the importance of a Vaughn index lies in its substance, and alternative forms are to be judged on

21

this basis and not rejected merely for failing to conform to a particular format."  Canning v. DOJ, 848 F. Supp. 1037, 1043 (D.D.C. 1994).

Here, ICE has provided more than enough detail to specify the records withheld and the basis for the redactions.  Its Vaughn Index and declarations describe the nature of the audio and video files, whether they were released in part or withheld in full, and the reason for claiming an exemption.  ICE explains, for instance, that Exemption 7(E) was invoked "because law enforcement techniques and/or procedures for law enforcement investigations compiled for law enforcement purposes, if disclosed, could reasonably be expected to risk circumvention of the law."  ECF No. 66-5 (Suppl. Decl. of Fernando Pineiro), ¶ 10; see Pineiro Decl., ¶ 28.  That risk is acute, according to ICE, because the agent depicted in the records was "performing his or her duties as an undercover agent," and so "disclosure of the content of these [video and audio files] would reveal techniques used by the agents to gather evidence against Mr. Ball."  Suppl. Pineiro Decl., ¶ 10.  That breach would, in turn, "assist bad actors" to "avoid future investigations."  Id., ¶ 11.  The "low bar" for asserting a withholding under Exemption 7(E) is thus "easily cleared here."  Kowal, 107 F.4th at 1033.

* * *

The Government must therefore release the documents listed at the end of Section III.C.1, supra, as well as the document represented in Plaintiff's FOIA Appendix, p. 66, without the Exemption 5 redaction.

## IV.    Conclusion

For the foregoing reasons, the Court will grant in part and deny in part Defendant's Motion for Summary Judgment.  A separate Order so stating will issue this day.

/s/ James E. Boasberg
JAMES E. BOASBERG
Chief Judge

Date: September 3, 2024